UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAUREL JONES, an individual<br><br>Plaintiff<br><br>v.<br><br>CVS PHARMACY, INC. and<br>CAREMARK PHC, LLC<br>Defendants | NO.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Laurel Jones, through counsel, hereby files this Complaint against CVS PHARMACY, INC. and CAREMARK PHC, LLC ("Defendants") alleging that Respondent has engaged in and continues to engage in unlawful discrimination against her in violation of the Americans With Disabilities Act, 42 U.S.C. §12101, et seq., the Rehabilitation Act of 1973, 29 U.S.C. §701, et seq., and the Affordable Care Act, 42 U.S.C. §18116, et seq.

## PARTIES

1. Plaintiff Laurel Jones is an individual who resides at 915 Orchard Drive, Chambersburg, Pennsylvania. Ms. Jones is a qualified individual with a disability. She is diagnosed with a life-threatening allergy to milk, corn, peanut,

1

tree nut, beans, soy, carrots, celery, tomatoes, shellfish, fish and mango. As a result of her allergy, Ms. Jones must only eat foods that are free from milk her allergens. Ms. Jones cannot eat any product or any food item or medication or that has been contaminated with one of her allergens.

2. Defendant CVS Pharmacy, Inc. is a Rhode Island corporation with its principal place of business at One CVS Drive, Woonsocket, Rhode Island 02895. It can be served through its registered agent for process, CT Corporation, System, 450 Veterans Memorial Parkway, Suite 7A, East Providence, R.I. 02914.

3. Defendant Caremark PHC, LLC is a Delaware limited liability company with its principal place of business at One CVS Drive, Woonsocket, Rhode Island 02895. It can be served through its registered agent for process, CT Corporation, System, 450 Veterans Memorial Parkway, Suite 7A, East Providence, R.I. 02914.

4. Defendants are jointly referred to as "CVS" or "Defendants."

5. CVS, through its various DEA registered subsidiaries and affiliated entities, conducts business as a licensed wholesale distributor and operates retail stores throughout the United States, including in Pennsylvania, that dispense and sell prescription medicines, including opioids. Caremark PHC provides prescription benefit management services.

## JURISDICTION AND VENUE

6. This Court maintains jurisdiction over the parties to this action. Defendants are citizens of the State of Rhode Island, with their principal place of business located in Rhode Island.

7. Plaintiff is a resident and citizen of Pennsylvania.

8. This Court has subject matter jurisdiction over this action. Federal question jurisdiction exists based on the assertion of claims for violations of the Americans with Disabilities Act, 42 U.S.C. §12101, et seq., the Rehabilitation Act of 1973, 29 U.S.C. §701, et seq., and the Affordable Care Act, 42 U.S.C. §18116, et seq. 10.

9. This Court has general diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity between the named Plaintiff and the Defendants.

## FACTS

10. Ms. Jones was diagnosed with an allergy to various foods – specifically, milk, corn, peanut, tree nut, beans, soy, carrots, celery, tomatoes, shellfish, fish and mango. Exposure to a food allergen causes the life-threatening immune system response anaphylaxis. Anaphylaxis is a multi-system response to the introduction of a trigger or allergen through inhalation, ingestion, or touch.

3

Even a small exposure can trigger anaphylaxis. Anaphylaxis can occur within seconds or minutes of exposure or symptoms can occur hours after exposure. Anaphylaxis can cause a sudden drop in blood pressure, changes in heartrate, and narrowing and blockage of airways. Anaphylaxis is always a life-threatening condition that can be fatal if not treated immediately and appropriately. There is no cure for food allergies and avoidance is the only way to protect food allergic individuals against a food allergy reaction.

11. Ms. Jones is employed at Staples located in Chambersburg, PA. As part of her employment, she contributes to a personal health care plan which is administered by.

12. One of the benefits of the health care plan is low co-payments for most prescription medications.

13. The prescription drug portion of Ms. Jones' health care policy is administered by CVS Caremark. In order to receive her prescription benefit, Ms. Jones must purchase her medication at a CVS-affiliated pharmacy. Prescriptions filled at non-CVS-affiliated pharmacies are not covered, and Ms. Jones must pay full-price for those medications.

14. On September 24, 2019, after having seen her allergist, Dr. Harper, Ms. Jones was diagnosed with even more allergies and sensitivities. Dr. Harper

prescribed medication to help Ms. Jones with her condition so that she could begin an immunotherapy treatment for her environmental allergies.

15. Ms. Jones requested that Dr. Harper send all her prescriptions to the local CVS since this was the designated pharmacy for her health plan. Dr. Harper's secretary called in prescriptions to the CVS pharmacy located at 840 Wayne Avenue in Chambersburg, PA.

16. Later that day, Ms. Jones went to the CVS in person.

17. Ms. Jones spoke with the pharmacist behind the counter. She explained that she has several food allergies and it was imperative that her prescription not be contaminated with her allergens. Of particular concern were dairy and corn which are often contained in prescription drugs.

18. Ms. Jones asked that the medicine dispenser be wiped down before filling the prescription. The pharmacist on duty was dismissive of Ms. Jones' concerns. He got belligerent and refused to do so.

19. The pharmacist rudely replied that their dispensers were "up to industry standards" and that he "knew what he was doing. Then, one of the pharmacist technicians joined in and rudely said, "We know how to do our job." Both were rolling their eyes the whole time.

20. Ms. Jones asked for assurances that her medication would be safe for her allergies, but the pharmacist refused to answer her. Because of the way he was standing, Ms. Jones could not read the pharmacist's name tag.

21. During the same encounter at the CVS on September 24, 2020, Ms. Jones asked about the safety of a flu shot for her allergies. Another pharmacist technician said, "We can't make promises" and failed to check to see whether the shot was safe. Ms. Jones paid full price for her medication with hesitation but did not get her flu shot.

22. The next month, on Tuesday October 22, 2019, Ms. Jones required the antibiotic clindamycin from her endodontist Dr. William Adams. Dr. Adams prescribed the medication and called it in to the same CVS pharmacy to be filled.

23. Later that day, Dr. Adams left Ms. Jones a voicemail message. In the message, he said that Ms. Jones should not trust the prescription because when he asked the CVS pharmacist about Ms. Jones' allergies and whether the drug contained her allergens, the pharmacist replied, "Good luck finding an antibiotic without corn or dairy." When Dr. Adams asked the pharmacist if he could find an antibiotic that was safe for Ms. Jones' allergies, he refused to help him and hung up the phone. Dr. Adams said that the pharmacist had a flippant attitude and that he had encountered similar problems with CVS before.

24. After having listened to the voicemail message left by Dr. Adams, Ms. Jones called the pharmacy the next day. She wanted to speak with the pharmacist that had dealt with Dr. Adams.

25. A pharmacist technician said over the phone in a rude manner, "It's Laurel Jones calling, no we don't have your prescription" and "he can't speak to you". It was the same pattern of behavior that she had experienced a month earlier from the CVS employees. Once again, the pharmacist was rude and refused to make any accommodation for her disability.

26. Ms. Jones could not trust that the medicine was safe for her to take, so she spoke again to Dr. Adams' office. Dr. Adams office nurse said that the doctor felt unsafe with CVS and wanted to send the prescription to a different pharmacy. However, Ms. Jones' employer-sponsored health care plan uses CVS pharmacy exclusively. Having the prescription filled at a non-CVS pharmacy would mean that Ms. Jones would have had to pay full price.

27. Because CVS was unwilling to check the ingredients, Ms. Jones had to do the job of the pharmacist to try to find what ingredients were in the medications she had been prescribed.

28. The prescription was eventually filled successfully at Chamber's Apothecary, where they could guarantee the medication was free of her allergens and not cross-contaminated. This meant that Ms. Jones had to pay a significant

amount more for her prescription than she would have paid at CVS. But without assurances that the medicine was safe and would not cause an anaphylactic reaction, CVS left her no other option.

29. Furthermore, because she was unable to get an influenza shot, Ms. Jones got the influenza virus and suffered needlessly which caused her to miss work.

30. Shortly after this experience, Ms. Jones called the CVS Caremark phone number listed on her health card to see if she could get the issue resolved. However, the representatives from CVS Caremark directed her to contact a CVS Pharmacy Staples Customer Account Manager named Meghan Bucciarelli. The representative refused to give Ms. Jones Ms. Bucciarelli's phone number, instead telling her that Ms. Bucciarelli would call her in 24 hours. However, Ms. Bucciarelli never called Ms. Jones back.

31. Next, Ms. Jones tried to ask her employer, Staples, if they could provide her relief from the requirements of the health care plan that medicines be filled with CVS Pharmacy. Staples was not able to help her.

32. Because of her fear of having an anaphylactic reaction from medicine filled at CVS, Ms. Jones now has to have all her medications filled at a pharmacy outside the CVS network at great expense to her.

33. In addition, only prescriptions filled by CVS count toward her out-of-pocket deductible. Prescriptions filled elsewhere not only force Ms. Jones to pay full price, but also prevent her from reducing the amount of her deductible to make the costs cheaper for her in the future.

34. Ms. Jones was never able to receive the immunotherapy treatment because she has not been able to pay the high cost of the uncovered medicine charged by non-CVS pharmacies. As a result, Ms. Jones is left with a drug plan that is essentially useless and is preventing her from receiving treatment that would greatly improve her condition.

35. She has also experienced extreme emotional distress from the discrimination she encountered from the CVS employees and from being denied the medical care that she needs.

36. The actions of the CVS employees in failing to make accommodations to provide safe medication for Ms. Jones violate Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., (the "ADA")

### COUNT I
### Violation of Americans with Disabilities Act
### (42 U.S.C. §12101 et seq)

37. Plaintiff incorporates the allegations contained in paragraphs 1-30.

38. Plaintiff is a qualified individual with disabilities within the meaning of the Americans With Disabilities Act. Plaintiff's life-threatening food allergies to

various allergens is an impairment that impacts many body systems, including her immune system, cardiovascular system, digestive system and circulatory system with potentially life-threatening consequences. She is substantially limited in the major life activities of eating and breathing. When she ingests even small amount of one of her allergens, her immune system responds by causing her blood pressure to drop which can lead to irreversible organ failure and death.

39. CVS is a place of public accommodation as defined by Title III of the Americans With Disabilities Act.

40. Respondent discriminated against Ms. Jones in violation of the ADA in denying her equal and safe access its programs and services.

41. As a direct result of the actions of Respondent, Ms. Jones has suffered harm.

## COUNT II
### Violation of Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794)

42. Plaintiff repeats, realleges and adopts paragraphs 1 through 65 above as if fully set forth herein.

43. The Rehabilitation Act forbids programs or activities receiving Federal financial assistance from, among other things, discriminating against otherwise qualified individuals with disabilities.

44. Plaintiff is a qualified individual with disabilities within the meaning of the Rehabilitation Act. Plaintiff's life-threatening food allergies to various allergens is an impairment that impacts many body systems, including her immune system, cardiovascular system, digestive system and circulatory system with potentially life-threatening consequences. She is substantially limited in the major life activities of eating and breathing. When she ingests even small amount of one of her allergens, her immune system responds by causing her blood pressure to drop which can lead to irreversible organ failure and death.

45. Defendants are subject to the Rehabilitation Act due to the fact that they receive Federal financial assistance from the United States Department of Health and Human Services, including Medicare provider payments from the centers for Medicare/Medicaid Services under Title XVIII, Part D of the Social Security Act, 42 U.S.C. §1395 et seq.

46. Defendants, through their discriminatory practices towards the Plaintiff, based upon her disabilities, has violated and continues to violate the Rehabilitation Act by, inter alia, denying Plaintiff the full and equal goods, services, facilities, privileges, advantages or accommodations of their retail pharmacies throughout the United States.

47. Defendants' conduct has harmed Plaintiff and will continue to harm Plaintiff unless and until Defendants are ordered by this Court to accommodate

Plaintiff's allergies and provide medication that is free of her allergens and safe for her to ingest.

## COUNT III
## Violation of the Anti-Discrimination Provisions of the Affordable Care Act
## (42 U.S.C. §18116)

48. Plaintiff repeats, realleges and adopts paragraphs 1 through 65 above as if fully set forth herein.

49. Section 1557 of the Patient Protection and Affordable Care Act ("ACA") (codified at 42 U.S.C. §18116) was established to combat healthcare discrimination by any health program, healthcare entity, or activity that receives federal funding. This Act of Congress makes it illegal to discriminate against individuals based upon their race, national origin, gender, age, or disability. Section 1557 of the ACA protects individuals from discrimination in any health program or activity of a recipient of federal financial assistance, such as hospitals, clinics, employers, retail community pharmacies or insurance companies that receive federal money. Section 1557 specifically extends its discrimination prohibition to entities that receive federal financial assistance in the form of contracts of insurance, credits, or subsidies, as well as any program or activity administered by an executive agency, including federal health programs like Medicare, and Medicaid.

50. 42 U.S.C. §18116, ADA Section 1557, provides in pertinent part as follows: (a) . . . an individual shall not, on the ground prohibited under… section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under such title VI, title IX, section 504, or such Age Discrimination Act shall apply for purposes of violations of this subsection. ACA § 1557, 42 U.S.C. §18116(a)

51. Under 42 U.S.C. §1396r–8(k)(10), "Retail Community Pharmacy" means an independent pharmacy, a chain pharmacy, a supermarket pharmacy, or a mass merchandiser pharmacy that is licensed as a pharmacy by the State and that dispenses medications to the general public at retail prices.

52. Recipients of Federal financial assistance, such as Defendants, are particularly prohibited from providing "any service, financial aid, or other benefit to an individual which is different, or is provided in a different manner, from that provided to others under the program." See 45 C.F.R. §80.3(a)(ii). Federal financial assistance has been interpreted and enforced to cover a broad range of

programs receiving federal funds. 86. Defendants are subject to Section 1557 due to the fact that they receive Federal financial assistance from the United States Department of Health and Human Services, including Medicare provider payments from the centers for Medicare/Medicaid Services under Title XVIII, Part D of the Social Security Act, 42 U.S.C. §1395 et seq.

53. Defendants meet the qualifications for being a "health program or activity, any part of which is receiving Federal financial assistance" under Section 1557(a).

54. Furthermore, Defendants represent that they are subject to Section 1557 of the ACA, and under that law, it "[C]omplies with applicable Federal Civil rights laws and does not discriminate on the basis of race, color, national origin, age, disability, or sex. CVS Pharmacy, Inc. does not exclude people or treat them differently because of race, color, national origin, age, disability or sex."(See https://www.cvs.com/bizcontent/general/CVS_Pharmacy_Nondiscrimination_Policy.pdf.)

55. Plaintiff's life-threatening food allergies have been deemed a "disability" under both federal and state laws because she has "a physical or mental impairment that substantially limits one or more major life activities," specifically limiting her ability to eat, to breathe, and affects her digestive and circulatory systems.

56.     The discriminatory actions of the Defendants alleged herein were undertaken solely on the basis of Plaintiff's disabilities.

57.     Due to Defendants' acts of discrimination, specifically, refusing to accommodate Plaintiff's allergies and provide medication that is free of her allergens and safe for her to ingest, Defendants' actions have violated and continue to violate Section 1557(a) of the Affordable Care Act by intentionally causing Plaintiff to "be excluded from participation in, be denied the benefits or, or be subjected to discrimination under any health program or activity, any part of which is receiving Federal financial assistance" based on disability which is a prohibited ground of discrimination under Title IX.

58.     Plaintiff has suffered damages by this violation of Section 1557(a) in the denial of access to necessary medical care and/or services including, though not limited to, the filing and receipt of her prescription medication.

59.     Plaintiff requests Declaratory and injunctive relief to protect her rights under Section 1557(a), and to remedy the Defendants' continued violation of Section 1557(a).

60.     Plaintiff has been harmed as a result of Defendants' conduct and is entitled to compensatory damages, attorneys' fees and costs, and all other additional appropriate relief as may be available under this cause of action and the applicable law.

## JURY DEMAND

Plaintiff requests a jury trial on all issues triable by a jury.

WHEREFORE Complainant prays for relief and judgment as follows:

a. Declare that Defendants discriminated against Ms. Jones by denying her equal access to its programs and services;

b. Enjoin Defendants from discriminating against Ms. Jones and require them to make reasonable accommodations for her allergies;

c. Award compensatory damages;

d. Assess civil penalties;

e. Provide equitable relief;

f. Provide reasonable attorneys' fees and costs;

g. All other appropriate declaratory, equitable, injunctive and monetary relief.

DATED: January 28, 2021

/s/ Laurel J. Francoeur
Laurel J. Francoeur, Esquire
BBO# 633085
Francoeur Law Office
36 Commerce Way
Woburn, MA 01801
781-222-0557
laurel@francoeurlaw.com

DATED:  January 28, 2021                    /s/  Lori K. Serratelli
                                                                               Lori K. Serratelli, Esquire
                                                                               PA Attorney No. 27426
                                                                               Schiffman, Sheridan & Brown, PC
                                                                               2080 Linglestown Road, Suite 201
                                                                               Harrisburg, PA  17110
                                                                               717-540-9170
                                                                               lserratelli@ssbc-law.com