IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LAUREL JONES,** | : CIVIL ACTION NO. 1:21-CV-157 |
| **Plaintiff** | : |
| v. | : (Judge Conner) |
| **CVS PHARMACY, INC., and CAREMARK PHC, LLC,** | : |
| **Defendants** | : |

**MEMORANDUM**

Plaintiff Laurel Jones brings this action against defendants CVS Pharmacy, Inc. ("CVS") and Caremark PHC, LLC ("Caremark") (collectively "defendants") for disability discrimination and intentional infliction of emotional distress. Defendants move to dismiss Jones' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. We will grant defendants' motion in part and deny it in part.

**I.      Factual Background & Procedural History**

CVS Pharmacy is a licensed wholesale distributor of pharmaceuticals and operates retail stores throughout Pennsylvania and the United States, dispensing and selling prescription medicines. (See Doc. 30 ¶ 5). For its part, Caremark provides prescription benefit management services and sends prescription drugs directly to consumers. (See id. ¶¶ 3, 5). According to defendants, Caremark is an indirect subsidiary of CVS Pharmacy, which in turn is a wholly owned subsidiary of CVS Health Corporation. (See Doc. 33 at 3).

Laurel Jones, a resident of Chambersburg, Pennsylvania, is allergic to various foods, including milk, corn, peanuts, tree nuts, beans, soy, carrots, celery, tomatoes, shellfish, fish, and mango. (See Doc. 30 ¶¶ 1, 10, 12). Exposure to these allergens, whether through inhalation, ingestion, or touch, causes anaphylaxis, a multi-system immune response that can lead to a sudden drop in blood pressure, heartrate changes, and the narrowing and blockage of airways. (See id.) Anaphylaxis can occur within seconds of an exposure and can be fatal if not treated immediately. (See id.) Given her diagnosis, Jones alleges that she is unable to consume any product, food item, or medication that contains or is contaminated with any of the foods listed above. (See id. ¶ 1). She also suffers from orofacial myofunctional disorder, a medical condition that impacts her speech and causes her to stutter. (See id. ¶¶ 1, 11).

Caremark administers the prescription drug portion of Jones' employer-provided health plan with Staples. (See id. ¶¶ 12, 14). One benefit of the Caremark plan is low co-payments for most prescription medications. (See id. ¶ 13). Another is the ability to count prescription costs toward the insured's out-of-pocket deductible. (See id. ¶ 40). To receive these benefits, Jones must purchase her medication at a CVS-affiliated pharmacy. (See id. ¶¶ 14, 40). Prescriptions filled elsewhere are not covered by Jones' plan, and she would be charged full price if she used a pharmacy other than one operated by CVS. (See id. ¶ 14). Jones also may opt to have her medications mailed to her directly through Caremark. (See id. ¶ 15).

The events culminating in this dispute began September 24, 2019, when Jones' allergist, Dr. Harper, diagnosed her with severe allergies to milk and corn.

(See id. ¶ 16). Dr. Harper informed Jones that milk and corn pose a significant risk because many prescriptions contain undisclosed amounts of one or both of those products. (See id. ¶ 17). In anticipation of beginning an immunotherapy treatment for Jones' environmental allergies, Dr. Harper prescribed several medications, including skin cream, albuterol, epinephrine, and levocetirizine. (See id. ¶¶ 18, 21). Jones asked Dr. Harper to send her prescriptions to her local, plan-designated CVS pharmacy at 840 Wayne Avenue in Chambersburg. (See id. ¶ 19). Dr. Harper's secretary obliged. (See id.)

Later that day, Jones went to the Wayne Avenue CVS to pick up her prescriptions and, on her own initiative, obtain a flu shot. (See id. ¶¶ 20, 22). Jones alleges that she stuttered while attempting to explain to the pharmacist that she has several severe food allergies and that it was imperative that her prescriptions be free of allergen contaminants. (See id. ¶ 22). Jones' prescription for levocetirizine especially concerned her because, unlike her other prescriptions, it had to be counted and packaged at the pharmacy. (See id.) She asked both the pharmacist and a pharmacy technician to wipe down the medicine dispenser before filling that prescription. (See id. ¶ 23). According to Jones, the pharmacist dismissed her concern, grew "belligerent," and declined to honor her request. (See id.) The pharmacist rudely replied that he knew what he was doing and that the dispensers were "up to industry standards"; the technician added, "We know how to do our job." (See id. ¶ 24). Both rolled their eyes at Jones. (See id.) Jones allegedly asked the pharmacist to check the drug formulary to see if any of her medications contained milk or corn, but he allegedly refused. (See id. ¶ 25). According to the

3

amended complaint, she later observed the technician doling out her pills without first wiping down the counting tray. (See id. ¶ 26). Furthermore, when Jones asked the pharmacist to check whether the flu shot contained any of her allergens, another technician said, "We can't make promises," and refused to inquire. (See id. ¶ 27). Jones reluctantly paid for her medications but did not get the shot. (See id.)

Afterwards, Jones contacted her doctor and described her experience. (See id. ¶ 28). He advised her not to take the levocetirizine because it could contain milk or dairy and thus might provoke an allergic reaction. (See id.) On his advice, Jones did not take any of the levocetirizine she had purchased. (See id.) Jones also was unable to obtain a low-cost flu shot elsewhere; she got the flu later that fall. (See id. ¶ 29).

On October 22, 2019, Jones' dentist, Dr. William Adams, prescribed the antibiotic clindamycin and called it in to the same CVS pharmacy. (See id. ¶ 30). Given her previous experience with CVS, Jones asked Dr. Adams to call CVS on her behalf to determine whether the antibiotic contained milk or corn. (See id. ¶ 31). After speaking with the pharmacist, Dr. Adams left Jones a voicemail message, telling her not to trust the prescription. (See id. ¶ 32). Dr. Adams explained that when he asked whether the drug contained Jones' allergens, the pharmacist flippantly replied, "Good luck finding an antibiotic without corn or dairy." (See id.) The pharmacist refused to look for another milk- or corn-free antibiotic and then hung up the phone. (See id.) Dr. Adams told Jones that he had experienced similar problems with CVS. (See id.)

Jones called the pharmacy the next day after listening to the voicemail and asked to speak with the pharmacist that dismissed Dr. Adams' entreaty. (See id. ¶ 33). A pharmacy technician answered the phone and rudely said, "It's Laurel Jones calling, no we don't have your prescription," and the pharmacist "can't speak to you." (See id. ¶ 34). Jones informed Dr. Adams that CVS similarly denied her request. (See id. ¶ 35). His office nurse relayed to Jones that, given Dr. Adams' occasional conflicts with Jones' CVS and other local branches, he felt CVS was unsafe. (See id. ¶ 36). Dr. Adams sent Jones' prescription to a different pharmacy, Chambers' Apothecary, because it was willing to check the ingredients and wipe down the counting tray. (See id. ¶ 37). Unfortunately for Jones, CVS is the exclusive pharmacy for her employer-sponsored health plan, so when she bought the clindamycin at Chambers', Jones paid full price—$123.00. (See id. ¶ 38). Had she filled the prescription at CVS, Jones asserts that she would have had to pay just $3.16. (See id.)

In light of her doctors' warnings against filling her medications at CVS, Jones transferred all her existing prescriptions to Chambers' Apothecary. (See id. ¶ 39). Not only did this increase her out-of-pocket costs, but it also prevented her from reducing the amount of her deductible, thereby denying her the benefit of lower future expenses. (See id. ¶ 40). Jones alleges she has been unable to refill her prescriptions for albuterol, "Brio," and epinephrine because they are cost-prohibitive at Chambers'. (See id. ¶ 41). Nonetheless, she fears returning to CVS given her personal experiences and doctors' advice. (See id.) Deprived of her prescriptions, Jones claims that her health has deteriorated. (See id. ¶ 42). Her

5

eczema has flared, her asthma has been affected, and she recently was treated in the emergency room for an unknown condition, requiring her to take prednisone. (See id.)  Notably, Chambers' dispensed the prednisone to Jones in liquid form after determining that the tablet form contained corn.  (See id.)

Following the 2019 flu season, Jones obtained a free flu shot through her employer; but she alleges that her immune system was compromised after she failed to adhere to her prescription regimen, and that she had an adverse reaction to the shot.  (See id. ¶ 43).  At some point, Jones purportedly called the Caremark number listed on her health card to try and resolve the issue with her local CVS pharmacy.  (See id. ¶ 44).  A Caremark representative directed Jones to contact Meghan Bucciarelli, a CVS Pharmacy Staples Customer Account Manager, but declined to give Jones Bucciarelli's number, telling her she would receive a call from the account manager within twenty-four hours.  (See id.)  Bucciarelli never called.  (See id.)  Due to the high costs of her medications at non-CVS pharmacies, which she avers she cannot afford, Jones has been unable to undergo immunotherapy treatment.  (See id. ¶ 46).  Jones' encounters with CVS employees and the consequent denial of necessary medical care have caused her extreme emotional distress.  (See id. ¶ 47).

On January 28, 2021, Jones filed a complaint against CVS alleging disability discrimination.  CVS moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).  We subsequently granted Jones leave to amend her complaint. CVS now renews its request for dismissal.  The motion is fully briefed and ripe for disposition.

**II.     Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal

7

conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

### III.  Discussion

Jones alleges that CVS and Caremark discriminated against her on the basis of her disabilities.  Her suit arises under the antidiscrimination provisions of three interrelated federal statutes: the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, and the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116, *et seq.*  She also asserts a state law claim for intentional infliction of emotional distress.  We address each claim *seriatim*.

#### A.  Counts I-III: Disability Discrimination

"[T]he ADA forbids discrimination against disabled individuals in major areas of public life, among them . . . public accommodations."  PGA Tour, Inc. v. Martin, 532 U.S. 661, 675 (2001).  To that end, Title III of the Act provides, in sweeping terms, that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by" the owner, lessor, lessee, or operator of the same.  42 U.S.C. § 12182(a).  To state a claim

for disability discrimination under this provision, a plaintiff generally must prove that she: (1) has a disability, (2) suffered discrimination on the basis of that disability, and (3) was thereby denied the goods or services of a place of public accommodation (4) by any person who owns, leases, or operates such place.  See Matheis v. CSL Plasma, Inc., 936 F.3d 171, 175 (3d Cir. 2019).

For purposes of its motion to dismiss, defendants assume that Jones' severe allergies and orofacial myofunctional disorder constitute disabilities.  (See Doc. 33 at 12).  Moreover, it is uncontested that pharmacies are places of public accommodation, see 42 U.S.C. § 12181(7)(F), and that defendants own, lease, or operate the Chambersburg pharmacy that Jones patronized and the facilities from which Caremark sends prescriptions directly to customers.  Those elements aside, defendants challenge the sufficiency of Jones' complaint on three grounds: (1) her inability to show that CVS Pharmacy denied her a good or service; (2) the absence of a link between the rude behavior she experienced at the pharmacy and her disability; and (3) her omission of any alleged discriminatory actions on Caremark's part.  (See Doc. 33 at 12-16).

        1.    **Denial of Goods or Services**

CVS contends that it did not deny Jones a good or service.  It points to her admission that she bought her prescribed medications from her local CVS pharmacy in September 2019, and simply chose not to have her prescriptions filled at any CVS branch moving forward.  (See Doc. 33 at 13 (citing Doc. 30 ¶¶ 27-28)). CVS also challenges Jones' assertion that pharmacy staff dispensed her medication without wiping down the counting tray as she requested, intimating that the staff

9

honored her request but she "just didn't see it." (See Doc. 33 at 13).[1] Jones does not deny the September purchase or that she was free to continue filling her prescriptions at CVS thereafter. Rather, the gravamen of her claim is that CVS denied her "*the full and equal enjoyment*" of those goods as well as the pharmacy's consulting services when it refused to address her concerns about the contents of her prescriptions and the flu shot. (See Doc. 34 at 4 (quoting 42 U.S.C. § 12182(a)) (Jones' emphasis)).

We find that Jones adequately alleges that CVS denied her both a good and a service. It is beyond cavil that prescription drugs and vaccines are goods, and that pharmacies engage in a "tangible service" by filling or administering them, respectively, on site. See Gil v. Winn-Dixie Stores, Inc., 993 F.3d 1266, 1280-81 (11th Cir. 2021), vacated as moot on reh'g, 21 F.4th 775, 776 (11th Cir. 2021) (*per curiam*). Here, although CVS filled Jones' prescription for levocetirizine, Jones alleges that she was unable to utilize it because pharmacy staff refused to check whether its ingredients included milk or corn and failed to wipe down the counting tray. (See Doc. 30 ¶¶ 22-26). Pharmacy staff similarly declined to check if the flu shot contained Jones' allergens, forcing her to forgo that seasonal vaccination. (See id. ¶ 27). Due to CVS' alleged conduct, Jones claims she was forced to pay nearly forty

---

[1] Defendants chide Jones for her delay in asserting the tray-wiping claim for the first time in her amended complaint and suggests that the court consider it a material change from her initial submission. (See Doc. 33 at 1-2 (citing W. Run Student Hous. Assoc., LLC v. Huntington Nat. Bank, 712 F.3d 165, 172-73 (3d Cir. 2013))). We find no prejudice to defendants or cause to disregard the well-settled pleading standard.

times more to fill her clindamycin prescription at Chambers' Apothecary.  (See id. ¶¶ 30-34, 38).

CVS' willingness to sell Jones her medication or give her a flu shot then or in the future is of no moment.  By refusing to answer basic questions about the contents of the vaccine and her prescriptions, Jones plausibly alleges that CVS denied her the benefit of its personalized consulting services on matters of critical importance to her health and safety.  Likewise, Jones sufficiently pleads that CVS constructively denied her the "the full and equal enjoyment" of at least one of the medications she purchased and rendered her levocetirizine prescription, on the advice of her doctor, functionally unusable.  See Doe v. CVS Pharmacy, Inc., 982 F.3d 1204, 1212 (9th Cir. 2020) (finding that plaintiffs adequately alleged disability discrimination where defendant "denied meaningful access to their prescription drug benefit," thereby preventing plaintiffs from receiving "effective" treatment); cf. Harty v. Burlington Coat Factory of Pa., L.L.C., 2011 WL 2415169, at *10 (E.D. Pa. 2011) (concluding that allegations tended to show disability discrimination where defendant, *inter alia*, furnished handicap parking spaces that were too narrow to be useful); see also O'Connor v. Scottsdale Healthcare Corp., 871 F. Supp. 2d 900, 903 (D. Ariz. 2012) (recognizing claim of constructive denial of accommodations).  Accordingly, we will deny CVS' motion on this ground.

### 2. Failure to Accommodate

Jones claims that CVS discriminated against her by refusing her requested accommodations.  (See Doc. 30 ¶ 48).  CVS disputes that Jones' allegations of "rude behavior" amount to discrimination.  (See Doc. 33 at 14-15).  In doing so, it

11

misconstrues the nature of Jones' case: that CVS denied her a benefit to which she was entitled—full and equal access to prescription drugs and vaccines—"under circumstances indicating discrimination on the basis of an impermissible factor," *i.e.*, her allergy-related and speaking disabilities. See Menkowitz v. Pottstown Mem'l Med. Ctr., 154 F.2d 113, 124 (3d Cir. 1998) (citation omitted). Jones alleges repeated attempts to communicate her life-threatening allergies and health needs to CVS Pharmacy staff and Caremark representatives, both directly and through intermediaries, which CVS employees either flippantly derided or ignored altogether. (See Doc. 30 ¶¶ 22-27, 30-34, 44). She claims that these dismissive attitudes were stereotypical responses to her speech impediment, for which pharmacy staff regarded her as "not worth paying attention to." (See Doc. 34 at 12). Contrary to CVS' view, this conduct suggests more than garden-variety rudeness, but rather acute disdain for Jones' particular vulnerabilities.

Moreover, among the ADA's definitions of discrimination is the

> failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

42 U.S.C. § 12182(b)(2)(A)(ii). Jones alleges that CVS denied two specific accommodations: checking the formulary for the drugs' ingredients and wiping down the dispensing tray. (See Doc. 30 ¶¶ 23, 25). Claims alleging disability discrimination for failure to accommodate involve an individualized, tripartite

inquiry that asks whether the request (1) is reasonable under the circumstances, (2) is necessary to afford meaningful access, and (3) would fundamentally or substantially alter the nature of the goods or services provided by the covered entity.  See PGA Tour, 532 U.S. at 683 n.38 (citing 42 U.S.C. § 12182(b)(2)(A)(ii)), 688; accord Berardelli v. Allied Servs. Inst. of Rehab. Med. 900 F.3d 104, 123 (3d Cir. 2018).  Although CVS does not contend with these factors, we find that Jones' requests satisfy them regardless.

Jones plausibly demonstrates the reasonableness of her requests because she sought relatively minor accommodations that are unlikely to "unduly strain financial resources."  See Nathanson v. Med. Coll. of Pa., 926 F.2d 1368, 1386 (3d Cir. 1991).  She also has shown that both accommodations arguably are essential to ensuring that she has meaningful access to the goods and services offered by CVS given the severity of her afflictions to common allergens, which can trigger debilitating physiological reactions and even death.  Cf. PGA Tour, 532 U.S. at 682 (recognizing necessity of permitting disabled golfer use of golf cart for tournament operating under walking rules).  And she reasonably contends that neither accommodation would require CVS to change its services fundamentally or substantially.  See McGann v. Cinemark USA, Inc., 873 F.3d 218, 224 n.4, 230 (3d Cir. 2017) (concluding that movie theater excluded deaf and blind patron from its services by failing to provide tactile interpreter, which would not have significantly altered its nature).  Indeed, CVS concedes that its pharmacy employees routinely wipe down pill-dispensing trays after each use, per company policy.  (See Doc. 33 at 13).  Nor does CVS dispute that pharmacists commonly check prescription

contents upon request or on their own initiative for health and safety purposes, such as identifying potentially adverse interactions between two or more drugs. According to Jones, Chambers' Apothecary readily honored her request and confirmed whether her prescriptions contained certain allergens, (see Doc. 30 ¶¶ 37, 42), demonstrating the apparent ease with which pharmacy staff can complete the inquiry within the normal course of their duties.  Both of Jones' requests appear far less onerous than requiring entities to supply mechanical or human auxiliary aides for hours-long events like golf tournaments or film screenings, as in PGA Tour, 532 U.S. at 687 (20 hours over 4 days), and Martin, 873 F.3d at 221 (more than 2 hours). Thus, Jones plausibly argues that CVS easily could have accommodated her but did not and that its actions ran afoul of the ADA as a result.[2]

---

[2] The pleading requirements under the Rehabilitation Act and the Affordable Care Act—which apply the ADA's prohibitions to federally funded entities and health programs or activities, respectively—are virtually identical to those for claims under the ADA.  See Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007); Gibbs v. City of Pittsburgh, 989 F.3d 226, 229 (3d Cir. 2021) (citing McDonald v. Pa. Dep't of Pub. Welfare, 62 F.3d 92, 94-95 (3d Cir. 1995)); Berardelli, 900 F.3d at 117 (noting that ADA and Rehabilitation Act claims often are addressed "in the same breath"); Bax v. Drs. Med. Ctr. of Modesto, Inc., ___ F.4th ____, 2022 WL 4127522, at *10 (9th Cir. 2022) (holding that nondiscrimination claims under the ACA and Rehabilitation Act are "subject to the same analysis"); SEPTA v. Gilead Sciences, Inc., 102 F. Supp. 3d 688, 698-99 (E.D. Pa. 2015).  Here, Jones alleges that CVS receives financial assistance from the United States Department of Health and Human Services, including Medicare-provider payments from the Centers for Medicare and Medicaid Services under Title XVIII of the Social Security Act, 42  U.S.C § 1395, *et seq*.  (See Doc. 30 ¶¶ 59, 63).  CVS does not contest Jones' averments in this respect, which are sufficient to state a *prima facie* case under both the Rehabilitation Act and the ACA.  See Cummings v. Premier Rehab Keller, P.L.L.C., 142 S. Ct. 1562, 1569 (2022) (concluding that defendant is subject to the ACA and Rehabilitation Act "because it receives reimbursement through Medicare and Medicaid for the provision of some of its services").  Therefore, Jones also has stated cognizable claims for relief in Counts II and III of her amended complaint.

### 3. Caremark

Lastly, defendants argue that Jones' discrimination claim against Caremark should be dismissed from the case because Jones fails to allege that it denied her goods or services or otherwise discriminated against her. (See Doc. 33 at 15-16). We agree. Jones focuses almost exclusively on her alleged treatment by the staff of CVS' brick-and-mortar pharmacy in Chambersburg. Her effort to draw Caremark into the mix turns upon a single unrequited customer service phone call and the bare fact that "*CVS owns Caremark.*" (See Doc. 34 at 8 (emphasis in original)). At its core, Jones' case against Caremark is that it designed her prescription drug plan to create a catch-22, whereby she reaps the plan's benefits only if she fills her prescriptions at CVS pharmacies. (See id.) However, the benefit plan that Jones' employer selected and made available to her does not constitute a place of public accommodation. See Parker v. Metro. Life Ins. Co., 121 F.3d 1006, 1010 (6th Cir. 1997); see also Doe v. BlueCross BlueShield of Tennessee, Inc., 926 F.3d 235, 243-44 (6th Cir. 2019) (citing Parker); Doe v. CVS Pharmacy, Inc., 982 F.3d 1204, 1213 (9th Cir. 2020), cert. granted in part, 141 S. Ct. 2882-83 (2021), and cert. dismissed sub nom. CVS Pharmacy, Inc. v. Doe, One, 142 S. Ct. 480 (2021).

Further, unlike her claims against CVS Pharmacy, on the face of Jones' complaint it does not appear that she requested any accommodations from Caremark specifically. Caremark administers Staples' prescription drug plan and offers customers a mail-delivery service for their prescriptions (see Doc. 30 ¶¶ 3, 5), but Jones does not allege that she sought to avail herself of those services or that Caremark somehow frustrated her efforts. On the facts alleged, Caremark's

connection to any sort of discriminatory act Jones may have experienced is tenuous at best. For these reasons, we will dismiss Jones' claims against Caremark with prejudice as we find Jones' claim to be legally deficient and, accordingly, any amendment would be futile. See Phillips v. County of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008) (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)).

### B. Count IV: Intentional Infliction of Emotional Distress

To state a claim for the common-law tort of intentional infliction of emotional distress ("IIED"), a plaintiff must prove that: (1) the defendant's conduct was extreme and outrageous; (2) the conduct caused the plaintiff severe emotional distress; and (3) the defendant acted with the intent to cause such distress or knowing that the same was "substantially certain" to occur. Brown v. Muhlenberg Township, 269 F.3d 205, 217-18 (3d Cir. 2001) (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. d).[3] Whether conduct could reasonably be regarded as extreme and outrageous is a threshold inquiry for the court's determination. M.S. *ex rel.* Hall v. Susquehanna Twp. Sch. Dist., 43 F.Supp.3d 412, 430 (M.D. Pa. 2014) (citing Reimer v. Tien, 514 A.2d 566, 569 (Pa. Super. Ct. 1986)). The Supreme Court of Pennsylvania has cited approvingly the Superior Court's requirement that the defendant's "conduct must be so outrageous in character, and so extreme in degree,

---

[3] The Pennsylvania Supreme Court has not yet explicitly recognized the tort of intentional infliction of emotional distress. See Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000). The Third Circuit has predicted that the Commonwealth's high court ultimately will adopt the Restatement (Second) of Torts' formulation. Williams v. Guzzardi, 875 F.2d 46, 50-51 (3d Cir. 1989); see also Mills v. City of Harrisburg, 589 F.Supp.2d 544, 558 n.13 (M.D. Pa. 2008) (citing Taylor, 754 A.2d at 652).

as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998) (quoting Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)).  Additionally, "a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct." Reedy v. Evanson, 615 F.3d 197, 231 (3d Cir. 2010) (quoting Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)).

CVS argues that Jones' IIED claim fails because she has not properly pled physical harm and the conduct she alleges was neither extreme nor outrageous. (See Doc. 33 at 18-21).[4]  Jones rejoins that this court recognizes an exception to the standard of proof where there is a "special relationship" between the parties, as in the patient-physician context, which may "dispense with the need to show physical harm." (See Doc. 34 at 13 (citing Sharrow v. Bailey, 910 F. Supp. 187, 194 (M.D. Pa. 1995) ("Where the relationship between plaintiff and defendant is one of 'trust and confidence,' . . . the standard is less stringent."))).  We need not decide whether the existence of a pharmacist-customer relationship between CVS and Jones lessens or completely relieves Jones of her burden.  Jones pleads that CVS deprived her of affordable prescription medications and caused physical harm by exacerbating her

---

[4] Defendants reiterate their view that none of the allegedly discriminatory conduct plausibly can be attributed to Caremark. (See Doc. 33 at 19-20).  We agree for the reasons stated in Part III.A.3 of this opinion.  Accordingly, we will dismiss Jones' IIED claim against Caremark with prejudice.

17

eczema and asthma and compromising her immune system. (See Doc. 30 ¶¶ 42-43).[5] At the pleading stage, such allegations are enough to meet the physical harm requirement. See Henderson v. LeBlanc, 2018 WL 2050149, at *15-16 (M.D. La. 2018) (finding that plaintiff sufficiently alleged substantial physical harm from denial of HIV medication and resulting deterioration of immune system); cf. Anderson v. W.R. Grace & Co., 628 F. Supp. 1219, 1226-28 & n.4 (D. Mass. 1986) (denying defendants' motion for summary judgment on emotional distress claims where company's contamination of water supply allegedly led to plaintiffs' adverse skin reactions, respiratory complications, and compromised immune systems, among other conditions).

Whether CVS' actions amount to extreme and outrageous conduct is a close question. "[L]iability clearly does not extend to mere insults, indignities, . . . petty oppressions, or other trivialities." RESTATEMENT (SECOND) OF TORTS § 46, cmt. D. However, conduct that ordinarily would not be deemed "heartless, flagrant, [or] outrageous" might rise to that level if the defendant knows that the plaintiff "is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity," and "proceeds in the face of such knowledge." See Manning v. Metro. Life Ins. Co., Inc., 127 F.3d 686, 690 (8th Cir. 1997), abrogated on other grounds, Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006) (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. F). Although the case law

---

[5] Jones also asserts that she required emergency room treatment (see Doc. 30 ¶ 42), but she does not specify when this occurred or the condition(s) for which she was treated or otherwise allege facts connecting CVS' actions to her hospital visit.

involving circumstances comparable to those alleged here admittedly is sparse, courts have found, albeit in markedly different contexts, that denying a person medication while on notice of his or her medical conditions can constitute outrageous conduct. See, e.g., Ponzini v. Monroe County, 897 F. Supp. 2d 282, 290-91 (M.D. Pa. 2012) (concluding, albeit with "serious reservations," that inmate adequately pled claim for IIED where prison officials allegedly knew of his psychological condition and denied him necessary psychiatric medication); Tandy Corp. v. Bone, 678 S.W.2d 312, 314, 317 (Ark. 1984) (finding sufficient evidence to support verdict for IIED, also called "the tort of extreme outrage," where employer knew plaintiff was on medication but refused him permission to take it on at least three occasions).

Here, after Jones notified CVS Pharmacy of her life-threatening allergies to food products commonly used to manufacture certain pharmaceuticals and requested accommodations, she alleges that pharmacy staff were rude and abrupt, rolled their eyes at her, and withheld critical information about the contents of certain prescriptions and a vaccine. (See Doc. 30 ¶¶ 23-27). Jones found a new pharmacy willing to accommodate her needs, but she says that the costs of her prescriptions soon became prohibitively expensive. (See id. ¶ 37-40). Forced to choose between an inconsiderate and potentially dangerous in-network pharmacy and the prospects of financial strain occasioned by out-of-network costs for medications—a modern day Scylla and Charybdis—Jones avers that she went without. (See id. ¶ 41). She claims that these experiences and the concomitant effects on her health have caused her severe emotional distress. (See id. ¶ 47).

One does not need medical training to recognize that the types of allergies and potential reactions Jones describes—which undoubtedly affect many Americans—are "objectively serious." See Vartinelli v. Aramark Corr. Servs., LLC, 796 Fed. App'x 867, 870 (6th Cir. 2019) (nonprecedential) (addressing, in a non-IIED case, prisoner's severe allergies to fish and peanut products). But CVS Pharmacy's employees are medical professionals, and Jones adequately alleges that they were acutely aware of her health needs and refused to accommodate her. These allegations plausibly establish that CVS' actions were extreme and outrageous, and it knew or should have known that they would cause Jones severe emotional distress. That is enough for Count IV of her amended complaint to survive CVS' motion to dismiss.

## IV. Conclusion

We will grant CVS' motion to dismiss Jones' amended complaint against Caremark with prejudice and deny it as to CVS Pharmacy. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated: September 28, 2022